IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| SPENCER LEONARD MCHONEY, | ) | |
| | ) | C/A No. 4:06-3016-PMD-TER |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| STATE OF SOUTH CAROLINA; | ) | |
| S.C. DEPARTMENT OF CORRECTIONS; | ) | |
| AND WARDEN STAN BURTT, LIEBER | ) | |
| CORRECTIONAL INSTITUTION; | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

Petitioner, Spencer Leonard McHoney ("Petitioner/McHoney"), is an inmate in the custody

of the South Carolina Department of Corrections (SCDC). Petitioner, appearing *pro se*, filed his

petition for a  writ of habeas corpus pursuant to 28 U.S.C. § 2254[1] on October 25, 2006.

Respondents filed a motion for summary judgment on February 1, 2007, along with a return and

supporting memorandum.  The undersigned issued an order filed February 2, 2007, pursuant to

Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising petitioner of the motion for summary

judgment procedure and the possible consequences if he failed to respond adequately. Petitioner filed

a response  on March 2, 2007.

---

[1] This habeas corpus case was automatically referred to the undersigned United States
Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Rule 73.02,
DSC.  Because this is a dispositive motion, this report and recommendation is entered for review
by the district judge.

# I.  PROCEDURAL HISTORY

The procedural history as set forth by the respondents in their memorandum has not been seriously disputed by the petitioner in his response. Therefore, the undersigned will set out the undisputed procedural history as set forth by the respondents.

Petitioner is presently confined to Lieber Correctional Institution of the South Carolina Department of Corrections  pursuant to orders of commitment from the Clerk of Court for Berkeley County.  Petitioner was indicted in the January 1996 term of the Court of General Sessions for Berkeley County for the murder of Violet White (96-GS-08-011) {PCR App. 2361-62}. The State provided to petitioner its notice of intent to seek the death penalty.

Petitioner was represented at trial by Attorneys Jerry N. Theos and Michael A. Brown. Capital *voir dire* began on April 28, 1997, before the Honorable Charles W. Whetstone, after which the case was tried before a jury. On May 4, 1997, petitioner was found guilty as charged. Following a sentencing hearing, the jury recommended life imprisonment and petitioner was so sentenced by Judge Whetstone on May 7, 1997. {PCR App. 2015, 2366}.

A timely Notice of Appeal was filed on petitioner's behalf with the South Carolina Supreme Court. Joseph L. Savitz of the South Carolina Office of Appellate Defense, was appointed to represent petitioner on direct appeal. Savitz initially filed an *Anders* brief; however, on July 17, 2000, the state supreme court issued an order directing certain issues to be fully briefed. {PCR App. 2154}. The following issues were briefed:

1.      The judge erred by allowing into evidence as a dying declaration the victim's identification of "Sp" as her killer.

2.      The judge erred by excluding evidence that appellant had passed a polygraph test when questioned about the victim's death.

3.  The judge erred by denying appellant's motion for a directed verdict, where the state failed to introduce any substantial evidence that he was guilty of the victim's murder.

4.  The judge erred by instructing the jury that they could not acquit appellant unless "[t]here is a real possibility that he is not guilty, "because this instruction diluted the state's burden of proving guilt beyond a reasonable doubt."

5.  The judge erred by allowing the solicitor to ask a leading question of a key state's witness, which improperly bolstered the credibility of that witness.

6.  The judge erred by rejecting the jury's request to visit the location where a key state's witness testified he saw appellant driving the victim's car.

Following briefing by both sides and an oral argument on January 11, 2001, the South Carolina Supreme Court affirmed the conviction and sentence by opinion dated March 19, 2001. State v. McHoney, 344 S.C. 85, 544 S.E.2d 30 (2001). {PCR App. 2155; 2175; 2197}.

Petitioner through retained counsel Tara Dawn Shurling subsequently filed an Application for Post-Conviction Relief ("APCR") on October 11, 2001. In the APCR, petitioner raised the following grounds:

1.  The Applicant received Ineffective Assistance of Trial Counsel prior and during his trial in violation of his rights pursuant to the Sixth and Fourteenth Amendments to the United States Constitution, as well as Article I, Section 14 of the South Carolina Constitution.

  a.  Trial counsel failed to adequately investigate the case prior to trial.

  b.  Trial counsel failed to adequately prepare and present witnesses at trial.

  c.  Trial counsel failed to recognize and present objections to errors which occurred during trial.

  d.  Trial counsel failed to develop and present viable defenses to the charges against the Applicant prior to and during his trial.

2.      The Applicant received Ineffective Assistance of Appellate Counsel on direct appeal to the Supreme Court of South Carolina in violation of his rights pursuant to the Sixth and Fourteenth Amendments to the United States Constitution, as well as Article I, Section 14 of the South Carolina Constitution.

           a.      Appellate Counsel failed to recognize and present meritorious appellate issues to the Supreme Court.

{PCR App. 2210}. The State filed its Return dated February 11, 2002. {PCR App. 2216}.

An evidentiary hearing in the matter was held before the Honorable Daniel F. Pieper on August 14, 2002 {PCR App. 2224}. Petitioner was present and represented by retained counsel Tara Shurling, Esquire; the State was represented by Assistant Attorney General S. Creighton Waters. At the hearing, petitioner expressly narrowed his grounds for relief to the following issues:

(1)      Whether trial counsel was ineffective for failing to properly make a proffer to support the admission of polygraph results, and for failing to properly argue its admissibility under Rule 702, SCRE;

(2)      Whether trial counsel was ineffective for failing to request a charge that the jury was to determine whether the victim's statement was made under belief of impending death, before it considered her identification of the assailant as "SP";

(3)      Whether trial counsel was ineffective for failing to request a jury view of the scene; and

(4)      Whether trial counsel was ineffective for failing to refute a claim by a prosecution witness that he was family of Petitioner.

{PCR App. 2226-36}. Petitioner called to testify trial counsel, Theos and Brown, polygraphers Thom Myers and Thomas Williams, and petitioner's mother Tommy McHoney; the State called no witnesses.

Following submission of proposed orders by both sides, Judge Pieper on December 7, 2002, issued an Order rejecting petitioner's claims and dismissing the APCR. {PCR App. 2309}.

4

-1000

Petitioner did not timely file an appeal from Judge Pieper's Order dismissing the APCR. On June 14, 2004, petitioner through his counsel, Tara Shurling, filed a second Application for Post-Conviction Relief ("APCR2"), in which she asserted on behalf of petitioner that he should be allowed a belated PCR appeal pursuant to Austin v. State, 305 S.C. 453, 409 S.E.2d 395 (1991), due to a clerical inadvertence in the failure to timely file the Notice of Appeal from Judge Pieper's Order. {PCR App. 2330}. On July 16, 2004, Judge Pieper signed a consent Order granting the belated Austin appeal. {PCR App. 2358}.

A notice of appeal was then timely filed and served. On January 7, 2005, petitioner through Attorney Shurling filed and served a Petition for Writ of Certiorari and Austin Petition for Writ of Certiorari. In the Petition for Writ of Certiorari, Shurling raised the following issues on behalf of Petitioner:

> Did the lower court correctly rule that the Petitioner is entitled to a belated appeal from a previous order denying Post-Conviction Relief?

In the Austin Petition for Writ of Certiorari, Shurling raised the following issues on behalf of petitioner:

1. Was trial counsel ineffective in failing to proffer the testimony of a second polygraph examiner and otherwise lay a foundation for admissibility of the favorable polygraph results he had moved to admit into evidence?

2. Was trial counsel ineffective in failing to request a jury instruction on the law that applies to dying declarations?

3. Was trial counsel ineffective in failing to challenge eyewitness Blanding's testimony concerning the familial relationship between him and the Petitioner?

The State filed a Return to the Petition for Writ of Certiorari and Return to the Austin Petition for Writ of Certiorari, both on April 11, 2005. Petitioner followed with a Reply Brief dated May 2, 2005.

5

On May 24, 2006, the South Carolina Supreme Court issued an Order in which it granted the petition

for writ of certiorari as to the APCR2 Order, dispensed with further briefing, and denied the petition

for writ of certiorari as to the APCR Order after proceeding with belated review. The Remittitur was

sent down on June 9, 2006.

## II. HABEAS ALLEGATIONS

Petitioner raised the following allegations in his habeas petition:

Ground One:    Petitioner received ineffective assistance of counsel in violation of his rights pursuant to the 6th and 14th Amendments to the U.S. Constitution.

Ground Two:    Petitioner received ineffective assistance of appellate counsel for failing to preserve and/or raise a subject matter jurisdiction issue based on a defective indictment, in violation of his rights pursuant to the Sixth and Fourteenth Amendments to the United States Constitution and established case law.

(Petition).

## III.  SUMMARY JUDGMENT

On February 1, 2007, respondents filed a return and memorandum of law in support of their

motion for summary judgment. Petitioner filed a response.

A federal court must liberally construe pleadings filed by pro se litigants, to allow them to

fully develop potentially meritorious cases.  See Cruz v. Beto, 405 U.S. 319 (1972), and Haines v.

Kerner, 404 U.S. 519 (1972).  In considering a motion for summary judgment, the court's function

is not to decide issues of fact, but to decide whether there is an issue of fact to be tried.  The

requirement of liberal construction does not mean that the court can ignore a clear failure in the

pleadings to allege facts which set forth a federal claim,  Weller v. Department of Social Services,

901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material

fact where none exists.   If none can be shown, the motion should be granted.  Fed. R. Civ. P. 56(c).

The movant has the burden of proving that a judgment on the pleadings is appropriate.  Once the

moving party makes this showing, however, the opposing party must respond to the motion with

"specific facts showing that there is a genuine issue for trial."  The opposing party may not rest on

the mere assertions contained in the pleadings.  Fed. R. Civ. P. 56(e) and Celotex v. Catrett, 477 U.S.

317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both

parties have had ample opportunity to explore the merits of their cases and examination of the case

makes it clear that one party has failed to establish the existence of an essential element in the case,

on which that party will bear the burden of proof at trial.  See Fed. R. Civ. P. 56(c).  Where the

movant can show a complete failure of proof concerning an essential element of the non-moving

party's case, all other facts become immaterial because there can be "no genuine issue of material

fact."  In the Celotex case, the court held that defendants were "entitled to judgment as a matter of

law" under Rule 56(c) because the plaintiff failed to make a sufficient showing on essential elements

of his case with respect to which he has the burden of proof.  Celotex, 477 U.S. at 322-323.


## IV.  STANDARD OF REVIEW

Since McHoney filed his petition after the effective date of the Antiterrorism and Effective

Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d),

as amended.  Lindh v. Murphy, 117 S. Ct. 2059 (1997); Breard v. Pruett, 134 F.3d 615 (4th Cir.

1998); Green v. French, 143 F.3d 865 (4th Cir. 1998).  That statute now reads:

> An application for a writ of habeas corpus on behalf of a person in
> custody pursuant to the judgment of a State court shall not be granted
> with respect to any claim that was adjudicated on the merits in State
> court proceedings unless the adjudication of the claim--(1) resulted
> in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the
> Supreme Court of the United States; or (2) resulted in a decision that
> was based on an unreasonable determination of the facts in light of
> the evidence presented in the State court proceeding.

To a large extent, the amendment of § 2254 shifts the focus of habeas review to the state

court application of Supreme Court law.  See O'Brien v. DuBois, 145 F.3d 16 (1st  Cir. 1998) ("the

AEDPA amendments to section 2254 exalt the role that a state court's decision plays in a habeas

proceeding by specifically directing the habeas court to make the state court decision the cynosure

of federal review.").  Further, the facts determined by the state court to which this standard is applied

are presumed to be correct unless rebutted by the petitioner by clear and convincing evidence.  28

U.S.C. § 2254(e)(1).

The United States Supreme Court has addressed procedure under § 2254(d).  See Williams

v. Taylor, 529 U.S. 362, 120 S.Ct. 1495 (2000).  In considering a state court's interpretation of

federal law, this court must separately analyze the "contrary to" and "unreasonable application"

phrases of § 2254(d)(1). Ultimately, a federal habeas court must determine whether "the state court's

application of clearly established federal law was objectively unreasonable."  Id. at 1521.

The AEDPA became effective on April 24, 1996.  The AEDPA substantially modified

procedures for consideration of habeas corpus petitions of state inmates in the federal courts.

## V.   DISCUSSION AS TO STATUTE OF LIMITATIONS

The respondents assert petitioner's claims must be dismissed as untimely. Specifically, respondents contend the petitioner's federal habeas petition should be dismissed because it was not timely filed under the one-year statute of limitations created by the AEDPA. Respondents argue as follows, quoted verbatim:

> Petitioner's conviction was finalized by the conclusion of direct review on June 18, 2001, or ninety (90) days after March 19, 2001, the date the South Carolina Supreme Court issued its opinion affirming petitioner's conviction. Petitioner therefore had until June 18, 2002, to file his federal habeas action unless the period was at any time tolled.

> Petitioner did not file his APCR until October 11, 2001, so one-hundred and fifteen (115) days of non-tolled time ran since the period of limitations began on June 18, 2001. Since petitioner did not properly perfect an appeal from the APCR, the period of limitations was tolled during the pendency of the APCR until no later than December 10, 2002, when Judge Pieper filed the Order of Dismissal rejecting petitioner's claims.

> Petitioner did not file his second APCR ("APCR2") seeking *Austin* review until June 14, 2001. Thus, a further five hundred and fifty-two (552) days of non-tolled time accrued from when the APCR was finally dismissed on December 10, 2002. The period of limitations was at most tolled until May 24, 2006, when the South Carolina Supreme Court issued its Order granting certiorari on the APCR2 for belated review of the APCR Order of Dismissal.

> Petitioner's delivery date is October 23, 2006, one hundred and fifty-two (152) days of non-tolled time accrued after the disposition of his APCR2. When the pre- and post- APCR and APCR2 time periods are added, there were at least eight hundred and nineteen (819) days of non-tolled time since petitioner's period of limitations began to run on June 18, 2001 (115+552+152=819). This is approximately two and one quarter years.

(Memorandum).

The applicable law is as follows: The AEDPA became effective on April 24, 1996. The AEDPA substantially modified procedures for consideration of habeas corpus petitions of state inmates in the federal courts. One of those changes was the amendment of 28 U.S.C. § 2244 to establish a one-year statute of limitations for filing habeas petitions.[2]  Subsection (d) of the statute now reads:

> (d)(1)  A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of–

>> (A)  the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

>> (B)  the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

>> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

>> (D)  the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

> (2)  The time during which a "properly filed" application for State post- conviction or other collateral review with respect to the

---

[2] Prior to this amendment there was no statute of limitations.  Habeas Rule 9(a) allowed dismissal only where the state could show it had been prejudiced by a delay in filing.  Duarte v. Hershberger, 947 F. Supp. 146, 148, n.2 (D.N.J. 1996).

10

pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection. (Emphasis added).

As stated under the procedural history, petitioner filed a direct appeal which was dismissed by the South Carolina Supreme Court on March 19, 2001.  Therefore, his conviction became final on June 18, 2001, ninety (90) days from that date, the time expiration for seeking certiorari review from the United States Supreme Court. Petitioner had until June 18, 2002, to file his federal habeas corpus petition unless the time was tolled. Petitioner filed his first application for PCR on October 11, 2001. Therefore, one hundred and fifteen (115) days of non-tolled time passed between the conclusion of direct review and the filing of the PCR application. The period of limitations for filing his federal habeas corpus action was tolled during the pendency of the PCR. The PCR application was dismissed by order on December 7, 2002. Petitioner did not file an appeal of the denial of his PCR application. However, petitioner, through counsel, filed a second PCR application on June 14, 2004, asserting that petitioner should be allowed to file a belated PCR appeal pursuant to Austin v. State, supra, due to a clerical inadvertence in the failure to timely file the Notice of Appeal from Judge Pieper's first PCR order.[3] Judge Pieper signed a consent order granting the belated Austin appeal. (App. 2358).  A notice of appeal was timely filed and served. On January 7, 2005, petitioner, through counsel, filed and served a petition for writ of certiorari and Austin Petition for Writ of Certiorari with the South Carolina Supreme Court. On May 24, 2006, the South Carolina Supreme Court granted the petition for writ of certiorari as to the second PCR order and denied the petition for writ of certiorari as to the first PCR order after proceeding with belated review. The Remittitur was sent down on June 9, 2006.

---

[3] An additional five hundred and fifty-two (552) days of non-tolled time accrued from the date of the denial of the first PCR application and the filing of the second PCR application.

11

Petitioner filed his federal habeas petition on October 25, 2006, with a Houston v. Lack

delivery date of October 23, 2006, based on the Lieber mailroom stamped received date. Therefore,

there was a total of one hundred and fifty-two (152) days of non-tolled time between the decision

of the South Carolina Supreme Court and the filing of this habeas petition for a total of two hundred

and sixty-seven days of non-tolled time (115+152=267). The undersigned concludes that based on

the fact petitioner was allowed a belated appeal on his first PCR application and allowed to file an

Austin appeal with the South Carolina Supreme Court, the time period between the decision of the

first PCR and the filing of the second PCR application was tolled. Respondents have not cited any

case law to support their position that the time period would not be tolled by the granting of the

belated appeal from the first PCR. Although not directly on point, the Honorable Patrick M. Duffy

stated in Pettinato v. Eagleton, 466 F. Supp.2d 641 (D.S.C. 2006) as follows:

> In *Austin v. State*, the Supreme Court of South Carolina reversed the
> summary dismissal of a second PCR application and remanded for an
> evidentiary hearing, where the petitioner alleged in his second
> application that his first PCR counsel was ineffective for failing to
> seek appellate review. 305 S.C. 453, 409 S.E.2d 395 (1991).
> Specifically, the court stated: "Because petitioner is entitled to the
> assistance of appellate counsel on PCR, and because we must craft a
> remedy to correct the unfairness which has occurred, we find his
> allegation that counsel failed to seek review in this case sufficiently
> states a claim for ineffective assistance." *Austin*, 305 S.C. at 454, 409
> S.E.2d at 396. Thus, "[u]nder *Austin*, a defendant can appeal a denial
> of a PCR application after the statue of limitations has expired if the
> defendant either requested and was denied an opportunity to seek
> appellate review, or did not knowingly and intelligently waive the
> right to appeal." *Odom v. State*, 337 S.C. 256, 260, 263, 523 S.E.2d
> 753, 755, 756 (1999) ("The one-year statute of limitations for PCR
> applications is not applicable to appeals filed pursuant to *Austin v.
> State*."); *see also Whitehead v. State*, 352 S.C. 215, 219, 574 S.E.2d
> 200, 202 (2002) ("We have held that the PCR statute of limitations
> found in S.C. Code Ann. 17-27-45(A) (Supp. 2001) does not apply to
> *Austin* claims.").

*Pettinato, Supra*.

An Austin appeal is allowed when a petitioner is prevented from seeking any review of the denial of his PCR application as a result of the action or inaction of his attorney. Austin v. State, 409 S.E.2d 395, 396 (S.C. 1991). In Aice v. State, the South Carolina Supreme Court limited the holding of Austin to its particular factual situation, or in other words, to the situation where the petitioner is prevented from seeking appellate review of a denial of his or her PCR application by the action or inaction of his or her attorney. 409 S.E.2d 392, 395 (S.C. 1991). In Pettinato, like Aice, the court found that petitioner had received a full bite at the appeal, in that he timely filed an original PCR application, was represented by counsel, and sought review of the ruling with the Supreme Court of South Carolina. Thus, the petitioners did not and could not claim in their second PCR petitions either that they requested and were denied an opportunity to seek appellate review or that they did not knowingly and intelligently waive their right to appeal. Thus, the court in Pettinato found that the second PCR did not toll the statute of limitations because the second PCR attacked the substantive merits of the conviction rather than the PCR procedure itself. Pettinato, 446 F. Supp.2d at 651. In this case, petitioner was granted a belated PCR appeal and allowed to file an Austin petition based on his challenge to the PCR procedure. Therefore, when petitioner was allowed to file a belated appeal to his original PCR denial and was not barred by the state statute of limitations, it also wipes the slate clear of the non-tolled time between the denial of his first PCR and the filing of the second PCR for purposes of the time for filing under the AEDPA. Therefore, the time period did not begin to run until the Austin appeal was denied by the South Carolina Supreme Court. Thus, petitioner's habeas petition is not barred by the statute of limitations.

## VI.  PETITIONER'S MOTION TO STAY

On March 2, 2007, petitioner filed a motion entitled "Motion to Stay and Abey." In the memorandum in support of the motion, petitioner requests that the court "stay and abey" his petition to allow him "to present his unexhausted claims to the state court and then return to federal court for review of his perfected petition." (Document #20). Petitioner asserts that respondents have alleged that issues "(E) and (F) and Ground two are procedurally barred as they were never asserted to the state courts." Specifically, petitioner asserts the following:

> The case at hand involves both a defective indictment and subject matter jurisdiction. Every indictment for murder must, in addition to setting forth the time and place of death, give a plain statement of the manner in which the death of the deceased was caused . . .  The victim was assaulted in one county and died later in another, raising a "time and place" issue because defectively, the indictment did not express it. The court's jurisdiction to hear the case is also in question.
>
> Petitioner was arrested in 1996 and the aforementioned cases and certain laws were not in effect. In good faith, the Petitioner felt he was raising this properly in this petition before the court. However, to prevent any question, he has filed a motion to stay and abey this petition to allow him time to re-file this before the state court, exhaust his state remedy as the state contends, in the first instance, and return to federal court for review of his perfected petition.
>
> Petitioner has demonstrated 1) good reason why this was not exhausted, 2) that the claims have merit, and 3) this is not a dilatory litigation tactic. . . .

(Document #20).

Respondents filed a response in opposition arguing that this is not a mixed petition or that petitioner has remaining any viable state remedies. Respondents argue that although petitioner claims

14

that he may raise a subject matter jurisdiction issue to state court at any time, his issue actually only involves a claim of a defective indictment, which cannot be raised at any time. Further, respondents assert that claims that the state court lacked subject matter jurisdiction is not cognizable in federal habeas corpus anyway.

Based on a reading of the petition, the procedural history and petitioner's motion to stay, the petition does not appear to be a mixed petition with unexhausted claims. In his motion, petitioner only addresses the issue that the state court did not have subject matter jurisdiction because of a defective indictment. Even if petitioner had raised a subject matter jurisdiction issue under state law below, it still would not be cognizable in his federal habeas corpus petition in that claims arising from state law are not cognizable. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). Jurisdiction is a non-cognizable state law issue. See Wright v. Angelone, 151 F.3d 151, 156-158 (4th Cir.). Thus, it is recommended that petitioner's motion to stay his petition be denied.

## VII.  CONCLUSION

Based on the above reasons, the undersigned finds that the respondents' motion for summary judgment (document #11) should be denied based on the statute of limitations issue. If the district judge adopts this report and recommendation, it is further recommended that respondents be allowed to re-file their motion for summary judgment addressing the merits of petitioner's habeas allegations. Therefore, it is

RECOMMENDED that respondents' motion for summary judgment (document #11) be DENIED and respondents be allowed to re-file their motion for summary judgment addressing the merits of petitioner's habeas allegations.

15

It is FURTHER RECOMMENDED that petitioner's motion to stay his habeas petition (document #20) be denied.

Respectfully Submitted,

s/Thomas E, Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

May 31, 2007
Florence, South Carolina

**The parties' attention is directed to the important notice on the next page.**